**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

LUCIOUS TATE, # R-11656,        )
                                           )

            **Plaintiff,**       )
                                           )

      **vs.**                  )       **Case No. 14-cv-862-JPG**
                                           )

DOCTOR LOFTON,             )
and UNKNOWN PARTY NURSE,    )
                                           )

          **Defendants.**      )

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

      Plaintiff is currently incarcerated at Jacksonville Correctional Center ("Jacksonville"), where he is serving a nine-year sentence for aggravated battery.  He brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, against two prison medical providers employed at the institution where he was previously confined, Robinson Correctional Center ("Robinson").  He claims that Defendants were deliberately indifferent to a serious medical condition.

      In lieu of a detailed factual statement, Plaintiff includes copies of a grievance which he submitted to Robinson officials over his medical issues, as well as the report denying his grievance, and his appeal of that denial (Doc. 1, pp. 5-10).  Plaintiff submitted the grievance on February 15, 2013, and appealed the denial on April 9, 2013.

      In the February 2013 grievance, Plaintiff claims that in July 2011, while he was confined at the Cook County Jail, he injured his right foot while playing basketball.  He was taken to a hospital and given an x-ray, but never learned the results (Doc. 1, p. 5).  Several weeks later he was transferred to the custody of the Illinois Department of Corrections ("IDOC") to begin serving his sentence.  He was told by a nurse at his intake institution to wait to seek further

medical attention until after he arrived at the next prison.

Soon thereafter, Plaintiff was placed at Robinson, where he immediately requested to see the doctor.  He was instructed that he must first see a nurse, which he did.  The nurse (presumably the Unknown Party/John Doe named in the complaint) referred Plaintiff to Defendant Doctor Lofton, who then examined his right foot and leg.  Defendant Lofton opined that his symptoms must be coming from a back injury, and referred him to a neurologist. Plaintiff claims that Defendant Lofton "totally ignored" his explanation that he had hurt his foot while playing basketball (Doc. 1, p. 6).

On July 10, 2012 (approximately one year after the original foot injury, and four months after Defendant Lofton's referral), Plaintiff was examined by the neurologist at an outside hospital.  This physician was unable to diagnose the cause of Plaintiff's ongoing pain, and suggested that maybe it would get better over time (Doc. 1, p. 6).  Two weeks later, Defendant Lofton informed Plaintiff of the results of the neurologist's exam, and advised him not to play basketball, to take it easy for a while, and to sign up for sick call if he had further problems.

Plaintiff immediately filed a grievance, because Defendant Lofton had failed to obtain his original x-ray results from the Cook County Jail, and would not listen to Plaintiff's concerns about the ongoing pain in his right foot.  As a result of this grievance, Defendant Lofton for the first time ordered an x-ray of Plaintiff's right foot.  It did not reveal any damage.

Three months later, on October 28, 2012, Plaintiff submitted a sick call request, complaining of pain in his right leg and foot, and noting that his foot and leg were still numb even after all the time that had passed since the injury (Doc. 1, p. 7).  He received a response (he does not say from whom) that he could take pain medication which may be purchased at commissary or obtained through signing up for sick call.  Plaintiff did not take any pain

medication, but on November 7, 2012, sent a request to Defendant Lofton asking her if she thought he might have sustained nerve damage that was causing his numbness and pain. She told him to sign up for sick call, which he did.

Defendant Lofton then saw Plaintiff again. She gave him "the same meager exam" as before (Doc. 1, p. 7). She authorized him to be given pain medication. Plaintiff states, however, that the medication did not stop the pain. More importantly, he complains that Defendant Lofton never took any further steps to determine the medical reason for the pain and numbness that had continued since July 2011. He feared that without proper treatment, he might eventually have permanent lack of feeling in his right foot, leg, hip, and genital region, and could become wheelchair-bound. *Id*.

Plaintiff's grievance was denied on March 29, 2013 (Doc. 1, p. 8). In that narrative, the grievance officer noted that the Cook County x-rays had been received, and were negative, like the later results. Further, Plaintiff had been issued crutches and had been observed "walking without difficulty." *Id*. In his appeal of the grievance, Plaintiff objected that he did not need crutches, and that his pain and numbness did not prevent him from walking all the time. He explained that the pain and numbness "comes and goes," causing him to need assistance with walking when those spasms appear (Doc. 1, p. 10). He attributed his symptoms to possible damage to a nerve, tendon, or ligament which could not be detected unless he was given an MRI.

The complaint states that Plaintiff has continued to experience the numbness and pain in his right foot and leg to the present day, and he has never obtained any effective medical treatment (Doc. 1, pp. 12-13). Defendants have never performed any further diagnostic testing to address his pain and suffering. In addition, Plaintiff claims to now be experiencing pain and suffering in his *left* leg (Doc. 1, p. 13). Although he implies that the left leg problems began

while he was still under the care of Defendant Lofton at Robinson, he gives no further information as to the onset or nature of those symptoms, nor does he describe any steps he may have taken to bring this matter to the attention of either Defendant.

Plaintiff seeks injunctive relief in the form of "immediate medical treatment" for his right foot, right leg, and left leg, as well as compensatory damages (Doc. 1, p. 14).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.  Accepting Plaintiff's allegations as true, the Court finds that the claim against Defendant Lofton for deliberate indifference to Plaintiff's serious medical need for treatment of his right leg and foot survives § 1915A review.

However, the Court notes that the injunctive relief sought by Plaintiff cannot be granted by this Court, based on the current complaint and the circumstances of Plaintiff's present incarceration.   "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot."  *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004).  *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995).  Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Robinson under the conditions described in the complaint, would it be proper for the Court to consider injunctive relief against any current Defendant.  *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).

The complaint does not disclose the date on which Plaintiff was transferred from

Robinson to his present institution (Jacksonville), nor does he include any facts regarding any attempts to seek treatment for his issues since the transfer.  It is clear, however, that because of Plaintiff's transfer, he is no longer under the care of the Robinson medical department, including the two Defendants named herein.  Therefore, his request for an injunction ordering Defendant Lofton and the Unknown Robinson Nurse to provide him with immediate medical care has become moot.  The Court shall not consider Plaintiff's request for injunctive relief at this time.

**Damages Claim for Deliberate Indifference to Serious Medical Needs**

Generally, an inmate's dissatisfaction with the medical care he receives in prison does not state a constitutional claim for deliberate indifference to medical needs, even if the quality of care was substandard to the point of negligence or malpractice.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).  However, in certain instances, a constitutional claim may lie if a prison official's actions amount to a failure to treat a serious medical condition.

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999).  Deliberate indifference involves a two-part test.  The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

The Seventh Circuit considers the following to be indications of  a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a

medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

Plaintiff's ongoing pain and recurrent numbness in his right leg and foot is an objectively serious medical need under the above standard. The duration of these symptoms is of particular concern.

As to the subjective component of a deliberate indifference claim, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference." *Farmer*, 511 U.S. at 837. In other words, a defendant must have actual knowledge of, or reckless disregard for, a substantial risk of harm. Inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). Nor will an inmate's disagreement with a doctor's course of treatment state a constitutional claim. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (courts will not take sides in disagreements with medical personnel's judgments or techniques).

However, an Eighth Amendment claim may be stated where a prison doctor persists in a course of treatment known to be ineffective, fails to order further testing or refuses to refer the inmate to a specialist. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (doctor continued ineffective treatment, and refused to order endoscopy or specialist referral over a two-year period during which plaintiff suffered from ulcer); *Kelley v. McGinnis*, 899 F.2d 612, 616-17 (7th Cir. 1990) (inmate may prevail if he can prove that defendant "deliberately gave him a certain kind of treatment knowing that it was ineffective" (citing *Estelle v. Gamble,* 429 U.S. 97, 104 n.10 (1976)). *See also Edwards v. Snyder,* 478 F.3d 827, 832 (7th Cir. 2007) ("a plaintiff's receipt of

*some* medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition")).

Based on the facts presented by Plaintiff, Defendant Lofton initially took steps to address his complaints.  She referred him to the neurologist, ordered and reviewed x-rays, and prescribed pain medication.  Those actions do not demonstrate that Defendant Lofton was deliberately indifferent to Plaintiff's condition.  However, Plaintiff claims that since his sick call request of October 2012, and to the present day, he has continued to experience numbness in his right leg and foot, as well as pain that has not been relieved by the offered medications.  He alleges that Defendant Lofton offered no other treatment, testing, or referral to address these problems, which had lasted for over 19 months as of February 2013.  The complaint is silent as to how much longer Plaintiff endured the ongoing pain and numbness while he was under Defendant Lofton's care at Robinson, before he was transferred.  Based on the fact that Plaintiff filed his grievance appeal from Robinson on April 9, 2013, he remained at that institution at least until that date (Doc. 1, p. 9).  By the time that appeal was denied over one year later (on April 15, 2014) Plaintiff was at Jacksonville (Doc. 1, p. 11).

At this juncture, Plaintiff has raised a claim against Defendant Lofton for deliberate indifference to the continuing pain and numbness in his right leg and foot, that merits further review.  Because Plaintiff does not allege that he ever informed Defendant Lofton of any problems with his left leg, he has failed to state a claim against her for deliberate indifference to that particular condition.

Further, Plaintiff's claim against the Unknown Party Robinson Nurse shall be dismissed with prejudice.  The complaint contains no allegations to suggest that any nurse was deliberately

indifferent to Plaintiff's need for medical attention for his persistent symptoms.  He does not describe any circumstance where a nurse refused to examine him or provide him with medication, prevented him from seeing the doctor, or interfered with his treatment in any way. Further, the requirement that Plaintiff follow institutional protocol, to submit a sick call request and be screened by a nurse in order to obtain medical treatment, does not indicate that any person was deliberately indifferent to his condition.  Accordingly, the complaint shall proceed only against Defendant Lofton.

**Pending Motion**

Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 2) shall be addressed in a separate order.  Plaintiff is **REMINDED** that he must submit his prisoner trust fund account statement no later than **September 22, 2014**, in order to obtain a ruling on his IFP motion and to avoid dismissal of this case (See Doc. 4).

**Disposition**

The deliberate indifference claim against **DEFENDANT UNKNOWN PARTY ROBINSON NURSE** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted, and this Defendant is **DISMISSED** from the action with prejudice.

The Clerk of Court shall prepare for Defendant **LOFTON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal

service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding any grant of his application to proceed *in forma pauperis.  See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under § 1915 for

leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 2, 2014**

*s/ J. Phil Gilbert*
United States District Judge